IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 07-cv-01136-WYD-KMT

MATHEW TINLEY,

    Plaintiff,

v.

POLY-TRIPLEX TECHNOLOGIES, INC., a Florida corporation; and
W. CHRIS BLANE,

    Defendants.

## ORDER

This matter is before the court on "Plaintiff's Motion to Compel Discovery" [Doc. No. 47, filed May 15, 2008]. "Defendants' Response in Opposition to Plaintiff's Motion to Compel Discovery" [Doc. No. 56] was filed June 4, 2008 and "Plaintiff's Reply in Support of Motion to Compel Discovery" was filed June 19, 2008. [Doc. No. 59]. Plaintiff amended his Reply on June 23, 2008. [Doc. No. 61]. A hearing was held on September 24, 2008 and the court now considers the arguments of counsel, as well.

This case involves an alleged agreement of the parties concerning Plaintiff's role and employment with Poly-Triplex Technologies, Inc. (PTT). W. Chris Blane is the primary stockholder of Poly-Triplex Investors (PTI), the holding company of PTT. Plaintiff claims to have entered into an agreement with Mr. Blane that Mr. Tinley would, among other things, function as CEO of PTT with removal only by unanimous consent of the board of directors and

would be paid an annual salary of $300,000 per year. (Compl., Doc. 1-2, ¶ 9). The Complaint further alleges that, "Tinley and Blane would divide equally any interest in PTI (after recovery by Blane of his investment in PTT after June 22, 2004) not held by persons or entities who were unaffiliated or unrelated to Blane." The court notes the handwritten and undated alleged agreement, attached to the Complaint as Exhibit A, Doc. No. 1-2, actually provides, "- Equity - Tinley is entitled to one half (50%) not owned by parties who are unaffiliated or unrelated to Chris Blane. Blane is entitled to recover funds he invests as equity after June 22, 2004 from the value of the equity that Blane and Tinley divide equally." (Compl., Exh. A, Doc. No. 1-2, p. 12 of 15, ¶ 3). The alleged agreement does not specify what Tinley is entitled to one-half of; it does not specify from whom or what Blane is entitled to recover equity investment funds; nor does it specify the entity or person from which Blane and Tinley will divide the equity. The defendants assert that the alleged agreement is a forgery and that Blane never entered into any such agreement with Tinley.

In his Motion to Compel, Plaintiff requests further responsive document production to his Third Request for Production of Documents ("3d Req. Prod."), numbers 1 and 2. [Doc. No. 47-2]. Plaintiff asserts the defendants' objections to production of further documents [Doc. No. 47-3] are not well-founded and requests this court to order the production requested. This is the second motion to compel filed by Plaintiff. *See* Order dated March 18, 2008, Doc. No. 43 (hereinafter "Order").

The first contested request for production sought responsive documents to the following:

> 1. Chris Blane testified in his deposition on January 29 and 30, 2008, that in 2004 two hurricanes damaged files stored in Florida which include documents relating to this litigation, including promissory notes from Blane to PTT or PTI and agreements between and/or among Ron McNeil, SunCoast Environmental, Inc., Blane, PTT and/or PTI. (Blane dep. Transcripts, Vol. I at pp. 79:4; Vol. II at pp. 6:12-7:15.) Please produce all such documents relating to this litigation in their current state. Please note your obligation to supplement your prior production of documents pursuant to Rule 26(e).

3d Req. Prod. at 3. The second contested response involves the following:

> 2. Chris Blane testified that he would never sign an agreement like the Tinley Agreement and has never seen anyone with such an agreement (Blane Dep. transcript, Vol. I at pp. 45:13-15), and Steve Barnett testified that all of the agreements reflecting various business dealings between Barnett and Blane have been professionally drafted and typed. (Barnett dep. Transcript, 122:11-18.) Please produce all agreements that set forth, define, or describe any business relationships, transaction or deals to which Blane and Barnett were or remain parties. You may redact any non-relevant private or confidential information to the extent necessary.

*Id.* at 4.

### *Request for Production No. 1*

The defendants objected to Request No. 1, ". . . to the extent this request seeks documents and/or things, that do not address in any manner the role, alleged membership interest, alleged future interest, alleged stock holdings or alleged partnership of Mr. Tinley in PTI or PTT," as well as on other more generalized grounds. Further, Defendants state, "that they have already produced to Plaintiff copies of the vast majority of documents damaged by the 2004 hurricanes, which were obtained by Blane in the Florida litigation with Manuel J. Casares. Any other damaged documents were discarded."

3

This court previously addressed a request for production concerning documents containing information about each sale of PTI membership interests by Chris Blane and each solicitation to purchase or to sell any class of membership interest in PTI. The court ordered production of those "documents which were created or adopted by Mr. Blane or any of this associates or other companies or representatives, which addressed in any manner the role, membership interest, future interest, stock holdings or partnership of Mr. Tinley in PTI or PTT and any and all sale or other related documents involved in any actual purchase of membership interest which addressed in any manner the role, membership interest, future interest, stock holdings or partnership of Mr. Tinley in PTI or PTT." (Order at 9-10). The language quoted above modified the class of documents which were requested concerning solicitations and sale of PTI memberships, not all documents relevant to the case. The court specifically stated, "The court does not see the relevance or the potential for relevant evidence to be developed from any third-parties' financial information underlying a purchase of membership in PTI."

In contrast, the documents Plaintiff now requests, "promissory notes from Blane to PTT or PTI and agreements between and/or among Ron McNeil, SunCoast Environmental, Inc., Blane, PTT and/or PTI," are clearly <u>not</u> sales or solicitation documents for membership in PTI. Therefore, this court's limitation language in the March 18, 2008 Order is inapplicable to the class of documents now requested. To the extent the files damaged by the 2004 hurricanes include documents relating to sales or solicitations for membership interests in PTI, of course, the defendants are under a continuing duty of disclosure pursuant to the court's March 18, 2008 Order.

This begs the question, however, of whether promissory notes between Mr. Blane and either PTT or PTI and/or agreements between Ron McNeil, SunCoast Environmental, Inc., Blane, PTT and/or PTI, are relevant to the litigation and subject to discovery.

The scope of evidence that is subject to discovery under the federal rules is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P 26(b)(1). "Limitations on the discovery process necessarily conflict with the 'the fundamental principle that 'the public ... has a right to every man's evidence.'" *Simpson v. University of Colorado*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citing *Trammel v. United States*, 445 U.S. 40, 50 (1980)). The court may, however, forbid the disclosure or discovery, specify terms for the disclosure or discovery, forbid inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters to protect a party from undue burden and expense. Fed. R. Civ. P. 26(c)(1).

The court notes that neither request for production at issue herein contains a date limitation. It is not disputed that Mr. Blane caused PTI to be organized in September 2003 (Compl. ¶ 8) and that in June of 2004 PTI acquired 100% of PTT's shares (Scheduling Order, Doc. No. 16). Since the alleged agreement at the center of this controversy is undated, the court finds that with respect to the categories of documents responsive in Req. For Production No. 1,

only documents concerning equity contributions or loans subsequent to June 22, 2004, the date contained in the body of the alleged agreement, through March 2, 2007, the date of Mr. Tinley's termination, are relevant.

### A. Promissory Notes

The plaintiff has alleged that he and Blane had an equity sharing arrangement in one of the entities which would entitle Mr. Tinley to one-half of its equity after Mr. Blane took out his equity contributions made after June 22, 2004. The defendants deny any such equity sharing agreement, however, should the plaintiff successfully establish that the agreement is valid, the amount of equity Mr. Blane has invested in PTT and/or PTI, since June 22, 2004 would be relevant to the issues in the case. Since the removal of "equity" from the capital of a company is not necessarily the same as payment of a liability which the entity may owe to Mr. Blane as a result of a promissory note, documents which are or which can be construed as promissory notes between Mr. Blane to or from PTT and/or PTI, if any, <u>executed on or after June 22, 2004,</u> also would be relevant.

### B. Agreements with McNeil

At the hearing on September 24, 2008, Plaintiff advised that the request for "agreements between and/or among Ron McNeil, SunCoast Environmental, Inc., Blane, PTT and/or PTI" was based on an interview with Mr. McNeil wherein Mr. McNeil indicated that Blane had agreed to settle a disputed matter with McNeil in exchange for a percentage share of PTI or PTT. The representation to the court at the hearing was that Mr. Blane never actually transferred any shares of either of the entities to Mr. McNeil. The financial records which were previously

addressed by this court's March 18, 2008 Order, (Doc. No. 43, §5), should provide further illumination concerning PTT's or PTI's association and dealings with McNeil and his company subsequent to June 22, 2004.[1]  The court fails to see any relevance to unlimited and non-date restricted "agreements between and/or among Ron McNeil, SunCoast Environmental, Inc., PTT and/or PTT" even applying liberal standards for discoverable information and finds that such an open-ended request is overbroad and such production would cause undue burden on the defendants.  Fed. R. Civ. P. 26(c).

### *Request for Production of Documents No. 2*

Defendants originally objected to this request for production of documents largely on the same grounds as the objection to Request No. 1.  At the hearing, the defendants also likened the request to a "fishing expedition" and objected that the information sought was for impeachment purposes only.

Federal Rule of Civil Procedure 26(a)(1)(B) places limitations on the need to disclose documents used "solely for impeachment."  *Schneider v. City and County of Denver*, 47 Fed. Appx. 517, 529-30, 2002 WL 1938583, 10-11 (10th Cir. 2002) (Rule 26 does not require the disclosure of information to be used "solely for impeachment.")  However, if a party intends to use evidence for any other purpose than impeachment, disclosure is generally required.  *See Searles v. Van Bebber*, 251 F.3d 869, 877 (10th Cir. 2001); *Aerotech Resources, Inc. v. Dodson*

---

[1] To the extent the defendants are not current in their production of the financial documents in accord with this Court's March 18, 2008 Order, said financial records shall be produced to the plaintiff no later than fourteen days from the entry of this Order.

*Aviation, Inc.*, 91 Fed. Appx. 37, 45, 2004 WL 27738, 8 (10th Cir. 2004). The Advisory Committee Notes on Rule 26 temper this stance, however, stating, "disclosure of such evidence [impeachment]-as well as other items relating to conduct of trial may be required by local rule or a pretrial order." See Advisory Committee Notes, 146 F.R.D. at 635.

Request for Production No. 2 is an unabashed attempt to ferret out documents which might impeach both Mr. Blane's and Mr. Barnett's assertions under oath that Mr. Blane would never have signed an agreement which was both handwritten and neither drafted nor reviewed. by an attorney or other professional in a similar position. Both witnesses stated that in all their dealings together, neither Mr. Blane nor Mr. Barnett, a non-party witness with limited pertinence to this case, recalled Mr. Blane ever entering into any agreement which was not typewritten and drafted by an attorney or other similarly situated professional. The plaintiff now seeks all agreements ever entered into between Mr. Blane and Mr. Barnett for all time and for any reason and with respect to any transaction in an effort to test the rather sweeping testimony of the two under oath. Even acknowledging the defendant's opening of this proverbial door, such an open-ended request crosses the bounds of reasonable discovery and would allow the sideshow to eradicate the circus.

That said, however, a more narrowly tailored discovery request designed to uncover the same impeachment material in less sweeping dimension would seek relevant information, given that whether or not Chris Blane knowingly signed the handwritten, non-professionally drafted "agreement" attached to the plaintiff's complaint is the single most important over-arching question in the litigation.

8

It is therefore **ORDERED**:

1. "Plaintiff's Motion to Compel Discovery" [Doc. No. 47] is GRANTED in part and DENIED in part as follows:

   a. To the extent the files damaged by the 2004 hurricanes include documents relating to sales or solicitations for membership interests in PTI, the defendants are **ORDERED** to produce the documents pursuant to and consistent with the Court's March 18, 2008 Order;

   b. Documents which are or which can be construed as promissory notes between Mr. Blane to or from PTT and/or PTI, if any, executed between June 22, 2004, up to and including March 2, 2007, shall be produced by the defendants to the plaintiff;

   c. The request for production of all agreements between and/or among Ron McNeil, SunCoast Environmental, Inc., Blane, PTT and/or PTI is DENIED;

   d. Defendant will produce to plaintiff all agreements, contracts or other similar documents regardless of the name or title, which purport to or were intended to create a binding obligation on the parties between Chris Blane and Steve Barnett which are either handwritten and/or which were either not drafted by or not reviewed by an attorney or some other similarly situated professional. The defendants may redact any substantive provisions of such agreements or other documents and any non-relevant private or confidential information to the extent necessary.

2. All document production pursuant to this Order will be transmitted to the plaintiff within twenty-one days of the date of this Order.

3. Defendants' request for an award of costs is DENIED.

Dated this 30th day of September, 2008.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge