IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  07-cv-01136-WYD-KMT

MATHEW TINLEY,

　　　　Plaintiff,

v.

POLY-TRIPLEX TECHNOLOGIES, INC., a Florida corporation; and
W. CHRIS BLANE,

　　　　Defendants.

---

**ORDER**

---

I.　　INTRODUCTION

　　　　THIS MATTER comes before the Court on Defendants' Revised Motion for

Summary Judgment [#55], filed June 3, 2008.  A Response to the Motion was filed on

July 17, 2008, and a Reply filed on August 4, 2008.  For the reasons stated below,

Defendants' Motion for Summary Judgment is granted in part and denied in part.

II.　　BACKGROUND

　　　　This case involves a dispute over the business relationship between Plaintiff

Mathew Tinley and Defendants W. Chris Blane ("Blane") and Poly-Triplex Technologies,

Inc. ("PTT").  PTT is a Florida corporation, incorporated in February, 2003, that

manufactures a product used to rehabilitate manholes.  Complaint and Jury Demand at

¶ 2.  Defendant Blane is a director of PTT, and resides in Vero Beach, Florida.  *Id.* at ¶

3.  In September 2003, Defendant Blane organized Poly-Triplex Investors, LLC ("PTI")

as a vehicle to acquire PTT's shares, and solicited membership interests in PTI.  Final

Pretrial Order, Stipulations at ¶ 8.  According to the Complaint, in late 2003, Plaintiff was

introduced to PTT's business and was approached by Defendant Blane who

represented that he desired Plaintiff's participation in the acquisition.  Complaint and

Jury Demand at ¶ 7.  Defendant Blane admits that he was interested in obtaining

qualified and credible management for PTT, and admits that he entered into discussions

with Plaintiff concerning his employment by PTT, but denies that he "approached"

Plaintiff.  Second Amended Answer at ¶ 7.  It is undisputed that Plaintiff eventually

became president and CEO of PTT and that in June, 2004, PTI acquired 100% of PTT's

shares.  Final Pretrial Order, Stipulations at ¶¶ 1, 10.  However, the parties vigorously

dispute the terms of Plaintiff's employment.

According to Plaintiff, in September 2004, he entered into written agreement with

Defendant Blane, acting on his own behalf and on behalf of PTT, which provided (1)

that Plaintiff would be president and CEO of PTT and could only be removed by

unanimous consent of PTT's board of directors (comprised solely of Plaintiff and

Defendant Blane); (2) that Plaintiff would have sole responsibility for the day to day

operations of PTT; (3) that Plaintiff would receive a base annual salary of $300,000,

increased annually by a cost of living adjustment; (4) that Plaintiff and Defendant Blane

would divide equally any percentage interest in PTI (after recovery by Defendant Blane

of his initial investment in PTT after June 22, 2004) not held by persons or entities

unaffiliated with Defendant Blane (who allegedly represented that 45% of the

membership interests in PTI were held by other investors brought in by Defendant

Blane); and (5) that PTT would pay Plaintiff a $900 monthly car allowance, provide paid vacation, comprehensive medical and dental insurance and reimbursement for all expenses related to carrying out Plaintiff's duties and responsibilities. Plaintiff refers to this agreement as the "Tinley Agreement," a copy of which is attached to the Complaint. Plaintiff contends that Defendants breached the Tinley Agreement, interfered with his management of PTT, failed to reimburse him for certain expenses, and refused to provide documentation substantiating his membership interest in PTI. Plaintiff maintains that in February and March of 2007, he and Defendant Blane discussed PTT's buyout of the Tinley Agreement, but the negotiations proved fruitless, and Plaintiff was eventually terminated in violation of the Tinley Agreement. Plaintiff asserts claims for Breach of Contract, Promissory Estoppel, Interference with Contract (against Defendant Blane) and a claim for Securities Law violations pursuant to C.R.S. §§ 11-51-501 and 11-51-604 (against Defendant Blane).

Defendant Blane admits that in January of 2007, he met with Plaintiff to discuss Plaintiff's ongoing compensation and to formulate some program whereby Plaintiff might be eligible to receive stock or stock options which would vest upon certain goals being reached by PTT, but asserts that no agreement was ever reached. Mtn. Sum. J. at 4. Defendant Blane contends that he never signed the Tinley Agreement, never received it, and never saw the document, until the instant action was filed. Mtn. Sum. J. at 2. Defendant Blane asserts a counterclaim for "Money Had and Received" based on allegations that he advanced Plaintiff a total of $83,500.00 in loans which were never repaid. Similarly, PTT asserts a counterclaim for "Money Had and Received" based on

allegations that Plaintiff improperly accepted $88,440.19 in expense reimbursements from PTT without providing proper documentation.  Defendants seek summary judgment in their favor and against Plaintiff on Plaintiff's claims for breach of contract, interference with contract, and violation of securities laws, as well as summary judgment on their counterclaims.  Defendants also assert that this Court lacks personal jurisdiction over them.

III.    ANALYSIS

A.    Personal Jurisdiction

I will first address Defendants' assertion that this Court lacks personal jurisdiction over PTT and Defendant Blane.  For the reasons set forth below, I find that Defendants have waived their right to assert this defense at this stage of the litigation.

Pursuant to Fed. R. Civ. P. 12(b), "[e]very defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (2) lack of jurisdiction over the person . . ..  A motion making any of these defenses *shall be made* before pleading if a further pleading is permitted."  (Emphasis supplied).  Rule 12(h)(1) further provides that "[a] defense of lack of jurisdiction over the person . . . is waived . . . (B) if it is neither made by motion under this rule nor included in a responsive pleading."  However, because Rule 12(b) defenses should be presented at the first available opportunity, a party may waive a defense of lack of personal jurisdiction by its conduct in the litigation, even if the defense is properly preserved in the answer.  *See Hunger United States Special Hydraulics Cylinders Corp. v. Hardie-*

*Tynes Manufacturing Co.*, 2000 WL 147392 (10th Cir. Feb. 4, 2000) (unpublished); *see also Pulse v. Larry H. Miller Group*, 2005 WL 1563222, at *9 (D. Colo. June 20, 2005) (unpublished) ("[t]he requirement of personal jurisdiction is an individual right which can be waived.  Rule 12(h)(1) "sets only the outer limits of waiver; it does not preclude waiver by implication.  Asserting a jurisdictional defect in the answer [does] not preserve the defense in perpetuity.  The defense may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct."  *Hardie-Tynes*, 2000 WL 147392, at *2 (quoting *Yeldell v. Tutt,* 913 F.2d 533, 539 (8th Cir. 1990) (defendant waived personal jurisdiction defense by participating in discovery, filing various motions, and participating in five-day trial before seeking a ruling on personal jurisdiction defense asserted in answer)); *see also* Wright & Miller, *Federal Practice and Procedure*, Civil 3d § 1391, at 515-16 (2004) ("[i]f [a] party wishes to raise [any of the Rule 12(h)(1) defenses], that must be done at the time the first significant defensive move is made . . . a party can be held to have waived a defense listed in Rule 12(h)(1) through conduct, such as extensive participation in the discovery process or other aspects of the litigation . . ..").

        In *Hardie-Tynes*, *supra*, the Tenth Circuit Court of Appeals upheld the district court's denial of the defendant's motion to dismiss based on lack of personal jurisdiction where the defendant, while timely raising the defense in its answer, proceeded to file a cross-claim, engaged in settlement negotiations, and in entered into a stipulation to dismiss all claims except for its cross-claim before requesting a ruling on the personal jurisdiction issue.  The Tenth Circuit noted that the defendant, rather than requesting a

ruling on its defense, "actively participated in the litigation and sought affirmative relief from the court," and stated that under these circumstances "[w]e have no difficulty in determining that [defendant's] actions 'amounted to a legal submission to the jurisdiction of the court.'" *Hardie-Tynes*, 2000 WL 147392, at * 3 (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704-05 (1982)); *see also Hamilton v. Atlas Turner, Inc.,* 197 F.3d 58, 61-62 (2d Cir.1999) (defendant waived personal jurisdiction defense by engaging in discovery and settlement conferences for a four-year period after initially raising the defense in its answer); *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd., et al.,* 181 F.3d 435, 443-44 (3d Cir. 1999) (defendants waived personal jurisdiction defense by filing motions for summary judgment on their counterclaim before seeking relief on the personal jurisdiction defense asserted in their answer); *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296-97 (7th Cir. 1993) (defendants waived personal jurisdiction defense through their conduct).

Here, Defendants filed a Notice of Removal on May 30, 2007. Shortly thereafter, on May 31, 2007 [#6], Defendants filed their Answer, Affirmative Defenses, and Counterclaims. While Defendants list "lack of personal jurisdiction" as one of several affirmative defenses set forth in their Answer, they did not place the issue of personal jurisdiction before the Court prior to filing their Revised Motion for Summary Judgement on June 3, 2008. Since the time the Notice of Removal was filed on May 30, 2007, Defendants have fully participated in this litigation as though jurisdiction existed. Specifically, prior to filing their Revised Motion for Summary Judgment, Defendants filed counterclaims, appeared at a Scheduling Conference before the Magistrate Judge,

entered into a joint protective order designed to expedite the flow of discovery in this case, participated in a discovery hearing before the Magistrate Judge, responded to Plaintiff's Motion to Compel Discovery, and participated in a settlement conference.  I would also note that Defendants did not object when the Magistrate Judge struck language pertaining to their personal jurisdiction defense from two separate places in the Scheduling Order [#16] during the Scheduling Conference.  After availing themselves of the resources of this Court for over a year and a half, Defendants now raise the defense of lack of personal jurisdiction as one of several arguments in their Revised Motion for Summary Judgment, where they also request affirmative relief on their counterclaims.  Under these circumstances, I find that Defendants have waived their right to assert the defense of lack of personal jurisdiction through their conduct in this litigation.  Therefore, based on the authorities cited above, Defendants are not entitled to dismissal on this basis.

      B.     <u>Motion for Summary Judgment</u>

           1.     <u>Summary Judgment Standard</u>

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  Once the moving party meets this burden, the burden shifts to the

nonmoving party to demonstrate a genuine issue for trial on a material matter. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party. *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

2.     Admissibility of the Tinley Agreement

Turning to the merits of the Defendants' summary judgment motion, I first address Defendants' contention that Plaintiff is barred from introducing the Tinley Agreement at trial and, absent this evidence, Plaintiff's claim for breach of contract must fail as a matter of law.

a.     The Tinley Agreement

A photocopy of the Tinley Agreement is attached to Plaintiff's Complaint, and the Final Pretrial Order indicates that Plaintiff will seek to admit this photocopy at trial. I note that the document attached to Plaintiff's Complaint is a five-page hand written document titled "Agreement." Two signatures appear on the last page of the document. The document is undated, contains no signature blocks and is not notarized. Both parties have asserted that they do not have the original version of the fully executed

Tinley Agreement. Plaintiff contends that he prepared and signed the original Tinley Agreement and hand-delivered the same to Defendant Blane for signature sometime in September 2004. Rsp. to Mtn. Sum. J. at 1; Complaint and Jury Demand at ¶ 9. It is undisputed that Plaintiff did not contemporaneously send the document to anyone, and that Plaintiff never witnessed Defendant Blane execute the Tinley Agreement. Rsp. to Mtn. Sum. J. at 1-2. While Plaintiff asserts that he later received a copy of the Tinley Agreement bearing Defendant Blane's signature by mail and, therefore, believes that Defendant Blane retained the original, Plaintiff admits he did not save the envelope in which he allegedly received the copy of the document from Defendant Blane. Rsp. to Mtn. Sum J. at 2. Plaintiff maintains that Defendant Blane did not make any changes to the Tinley Agreement, other than to affix his signature to the last page of the document. Rsp. to Mtn. Sum. J. at 2.

Defendant Blane contends that he never received the Tinley Agreement, never signed it, and never even saw the document until this case was filed. Mtn. Sum. J. at 2. While Defendant Blane testified in deposition that the signature on the copy of the Tinley Agreement looks like his signature, he maintains that he never signed the document. Blane. Dep., Vol. II, p. 39:9-11. Defendant Blane theorizes that his signature may have been taken from another document he signed and forged onto the Tinley Agreement. Blane Dep., Vol. II, 39:3-49:18. Defendant Blane notes that when the parties met in January of 2007 to discuss Plaintiff's compensation Plaintiff did not produce a copy of the Tinley Agreement. Mtn. Sum. J. at 4. In addition, Defendant has come forward with evidence that Plaintiff acted inconsistent with the terms of the Tinley

Agreement by purposefully lowering his salary to $97,000 in 2006, and by claiming on his March 8, 2007, financial statement in his divorce case that he owned no stock, business interests, or had any money owing to him, and that he owed Defendant Blane $26,000.  Mtn. Sum. J. at 5-7.  Defendant further notes that it is undisputed that at the time of Plaintiff's termination, he never claimed that his termination was contrary to the terms in the Tinley Agreement.  Rsp. to Mtn. Sum. J. at 8.  Finally, Defendant Blane has attached deposition excerpts from Plaintiff's assistant, Belinda Enriquez, who testified that on April 4, 2007, she gave Plaintiff a folder containing a handwritten document with blue and black ink that looked like the signature page of the Tinley Agreement.  Enriquez Dep. at 51:7-52:7; 151:10-156:11.

In the Revised Motion for Summary Judgment, Defendants take the position that the Defendant Blane's "signature" on the photocopied document is a forgery, and assert that pursuant to Federal Rules of Evidence 1002 and 1003, I should require Plaintiff to produce the original document, so that it can be examined forensically, or dismiss this case "as the entirety of the lawsuit rests on a forged document that cannot survive the rigors of examination of evidentiary material by the Court under these circumstances." Mtn. Sum. J. at 12-13.  In response, Plaintiff contends that pursuant to Rule 1004, he is not required to produce the original Tinley Agreement, and pursuant to Rule 1008, any dispute concerning the existence of a written agreement is an issue of fact for the jury to decide.

b.     <u>Best Evidence Rule</u>

Federal Rule of Evidence 1002, the so-called "Best Evidence Rule," states that to

prove the content of a writing, the original writing is required "except as otherwise provided in these rules or by law."  Under Rule 1001(4), photocopies are considered duplicates.  Rule 1003, provides that:

> [a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

The Tenth Circuit has acknowledged that "despite our age of technology, a trial court must still be wary of admitting duplicates 'where the circumstances surrounding the execution of the writing present a substantial possibility of fraud.'" *United States v. Haddock*, 956 F.2d 1534, 1545 (10th Cir. 1992) (citing 5 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 1003[02] (1991)).  According to Defendants, "a genuine question exists as to the authenticity of the photocopied document attached to Plaintiff's Complaint, identified as the Tinley Agreement," and the circumstances make it unfair to Defendants to admit the photocopied Tinley Agreement "in lieu of the non-existent original."  Mtn. Sum. J. at 11.

However, under Rule 1004, an original is not required, and other evidence of the contents of a writing is admissible if "(1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith. . . ."   Pursuant to the Advisory Committee's Note accompanying Rule 1004, "[t]he rule recognizes no 'degrees' of secondary evidence," thus the proponent is free to prove the contents of a writing with any secondary evidence he or she chooses.  *See also*, 6 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 1004.02[1] (2009) ("once the conditions in Rule 1004 are met, the party seeking to prove the contents of a writing . . . may do so by any kind of

secondary evidence ranging from . . . hand written copies to oral testimony . . ..").
However, if the secondary evidence consists of a duplicate that would otherwise be
inadmissible under Rule 1003 because there is a genuine question as to the authenticity
of the original, Rule 1004 "normally should not function as an alternative path to
admissibility." *See* Wright & Gold, *Federal Practice and Procedure*, Evidence § 8003 at
410-11 (2000).

Pursuant to Rule 1008, "[w]hen the admissibility of other evidence of contents of
writings . . . under these rules depends upon the fulfillment of a condition of fact, the
question whether the condition has been fulfilled is ordinarily for the court to determine
in accordance with the provisions of Rule 104." Therefore, the court would typically
resolve any factual disputes concerning whether a "genuine question is raised as to the
authenticity of the original" under Rule 1003, or whether the "originals are lost or have
been destroyed" under Rule 1004. *See* Rule 1008, Advisory Committee's Note.
However, Rule 1008 further provides that "when an issue is raised . . . whether the
asserted writing ever existed, . . . the issue is for the trier of fact to determine as in the
case of other issues of fact."

Here, Plaintiff appears to seek admission of a copy of the Tinley Agreement
pursuant to Rule 1004, which allows for the admission of "other evidence" of a writing
when the proponent can establish that the original has been lost or destroyed, unless
the proponent lost or destroyed the original in bad faith. Plaintiff correctly notes that
even if I were to determine that a genuine issue as to the authenticity of the original
Tinley Agreement precluded admissibility of the duplicate under Rule 1003, Plaintiff

could still attempt to offer other "secondary evidence" of the existence of Tinley Agreement, such as his testimony, so long as he can establish that the original document is "lost" and was not destroyed in bad faith.  The most common means of proving that the original was lost or destroyed is "'circumstantial evidence showing a diligent but unsuccessful search for the document.'"  *See Cross v. United States*, 1998 WL 255054, at *5 (10th Cir. May 19, 1998) (unpublished) (quoting *United States v. McGaughey*, 977 F.2d 1067, 1071 (7th Cir. 1992)).  Here, Plaintiff's evidence of "loss" consists of his deposition testimony that he hand-delivered the Tinley Agreement containing his signature to Defendant Blane, and that he later received an executed photocopy of the Tinley Agreement containing both his signature and Defendant Blane's signature in the mail.   Tinley Dep. at 130:14-131; 201:16-22.  Thus, Plaintiff contends that the original, fully executed Tinley Agreement is "lost" in the sense that both parties maintain that they do not have the document, and it cannot be located.  *See* Wright & Gold, *surpa,* § 8014 at 451 (within the context of Rule 1004 "'Lost' means that the item cannot be located").  Conversely, Defendant Blane has testified that he never saw the Tinley Agreement prior to this lawsuit, and that the signature on the Tinley Agreement, which looks like his signature, may have been taken from another document he signed. Blane Dep., Vol. II, 39:3-49:18.  Defendant Blane's testimony that the original document is a forgery, and Ms. Enriquez's testimony that Plaintiff had the original in his possession in April of 2007, is evidence that calls into question the authenticity of the original, and evidence of bad faith under Rule 1004.  *See Cross*, *supra*, 1998 WL 255054, at *5 citing *Seiler v. Lucas Film, Ltd.*, 613 F.Supp. 1253, 1255-63 (N.D.Cal.

1984), *aff'd*, 808 F.2d 1316 (9th Cir. 1986) (the purposeful destruction or withholding of original documents and the fabrication of secondary evidence will support a finding of bad faith under Rule 1004(1)).

While I would normally resolve factual disputes concerning loss of the original, authenticity and bad faith, here the evidence presented as to these issues consists almost exclusively of the parties' conflicting testimony.  Defendants' additional evidence of Plaintiff's conduct with respect to the Tinley Agreement is circumstantial evidence elicited to create an inference that the Tinley Agreement never existed prior to the filing of this lawsuit.  If I were to find that Plaintiff, in fact, withheld or destroyed the original Tinley Agreement in bad faith, that finding would preclude Plaintiff from offering any secondary evidence of the existence of the Tinley Agreement, and the jury would never reach the central issue in this case; i.e., whether the parties reached a final agreement regarding the terms of Plaintiff's employment, and what those terms entailed.  Resolution of whether the asserted writing ever existed is an issue to be resolved by the trier of fact under Rule 1008.  Here, the Advisory Committee's Note accompanying Rule 1008 is instructive:

> Most preliminary questions of fact in connection with applying the rule preferring the original as evidence of contents are for the judge, under the general principles announced in Rule 104 . . . However, questions may arise which go beyond the mere administration of the rule preferring the original and into the merits of the controversy. For example, plaintiff offers secondary evidence of the contents of an alleged contract, after first introducing evidence of loss of the original, and defendant counters with evidence that no such contract was ever executed.  If the judge decides that the contract was never executed and excludes the secondary evidence, the case is at an end

-14-

without ever going to the jury on a central issue.

Since whether or not a contract was ever executed "goes to the merits of the
controversy, the allocation of the power to decide these facts implicates the right to trial
by jury." *See* Wright & Gold, *supra*, § 8062, at 573; *see also* C. Mueller and L.
Kirkpatrick, 5 *Federal Evidence* § 10:24 (3d ed. 2008) ("[i]f a duplicate were excluded
whenever the evidence suffices to support a finding that the original was not authentic,
a jury would have nothing to decide because the duplicate would be excluded.
Consequently Fed. R. Evid. 1008 would have no room to operate. Perhaps more
important, the jury can be trusted to determine whether the original is or is not authentic,
and admitting a purported duplicate is not likely to blind the jury to its responsibility
where this question of authenticity remains at large.").

Here, I find that Plaintiff has presented sufficient evidence that the original Tinley
Agreement is "lost" within the meaning of Rule 1004(1), and a copy of the Tinley
Agreement is admissible as "other evidence of the contents of a writing" under Rule
1004. The inferences to be drawn from Defendants' circumstantial evidence suggesting
that the Tinley Agreement never existed prior to this lawsuit, as well as the credibility of
the parties' testimony regarding the existence of the Tinley Agreement are questions for
the jury to decide under Rule 1008. Certainly Defendants may attack the sufficiency of
the copy of the Tinley Agreement as well as Plaintiff's credibility, but these questions go
to the weight, rather than the admissibility of the evidence. *See Weinstein's Evidence*,
*supra*, at ¶ 1004.02[1] ("an opponent may attack the secondary evidence's sufficiency,
including the witness's credibility. This attack, however, goes not to the evidence's

admissibility but to its weight and is a matter for the trier of fact to resolve."); *see also Remington Arms Co. v. Liberty Mut. Ins. Co.*, 810 F.Supp. 1420, 1422-23 (D. Del. 1992).

Defendants maintain that the evidence in this case suggests that the parties had not negotiated and agreed upon the essential elements of a compensation package for Plaintiff and, therefore, no enforceable contract exists. "Generally, whether a contract exists is a question of fact to be determined by all of the surrounding circumstances." *See James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 372 (Colo. App. 1994). The copy of the Tinley Agreement is some evidence of a written agreement between the parties. Therefore, a question of fact remains as to the existence of a contract between the parties and Defendants are not entitled to summary judgment as to Plaintiff's breach of contract claim.

### 3.     Securities Law Claim

I next address Defendants' assertion that Plaintiff's state securities law claim fails as a matter of law. In this claim, Plaintiff seeks equitable relief against Defendant Blane for violation of C.R.S. § 11-51-501(1) which provides that "[i]t is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly: (a) [t]o employ any device, scheme, or artifice to defraud; (b) [t]o make any untrue statement of a material fact or to omit to state a material fact . . . ; or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." Pursuant to C.R.S. § 11-51-604(3), "[a]ny person who recklessly, knowingly, or with an intent to defraud **sells** or buys a security in violation of

section 11-51-501(1) . . . is liable to the person buying or selling such security . . .."

(Emphasis added). Defendant Blane contends that "Plaintiff has not and cannot

produce any evidence that he purchased any membership interest in PTI from Blane, or

that he has ever owned any membership interest in PTI." Mtn. Sum. J. at 13-24. In

other words, Defendant Blane challenges Plaintiff's ability to produce evidence of a

"sale" of a security.

In response, Plaintiff notes that the Colorado Securities Act defines "sale" or

"sell" to include "every contract of sale of, contract to sell, or disposition of a security or

interest in a security for value." C.R.S. § 11-51-201(13)(a). According to Plaintiff, "it is

well-settled that an agreement to sell a security in exchange for value, including the

agreement to pay corporate stock in exchange for employment services, constitutes a

contract for the sale of a security." I agree with Plaintiff, that his state law securities

claim does not fail simply because the alleged contract for sale was not fully performed.

Plaintiff has produced evidence that part of his compensation for acting as President

and CEO of PTT included a percentage interest in PTI. *See Technology Exch. Corp. of

Am., Inc. v. Grant County State Bank*, 646 F.Supp. 179, 182 (D. Colo. 1989) (construing

the term "purchase or sale" under federal securities law to include a contract whereby

plaintiff provided services in exchange for stock); *see also Coffey v. Dean Witter

Reynolds Inc.*, 961 F.2d 922, 926-27 (10th Cir. 1992) (noting that federal and Colorado

State law concerning the purchase and sale of securities are substantially identical).

Nevertheless, Defendant Blane contends that Plaintiff cannot claim that he is

owed an equity interest in PTI or any other monies from Defendants because these

assertions contradict his financial statement in a prior divorce proceeding in which he stated that he had no stocks, bonds, mutual funds and other non-retirement accounts, and also swore that he held no business interests, stock options, and was not personally owed any money. Citing, *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806-07 (1999), Defendant Blane asserts that Plaintiff is attempting to avoid summary judgment on this claim by creating a "sham fact" issue. In response, Plaintiff asserts that there is no contradiction between the representations he made in his Sworn Financial Statements and his deposition testimony. According to Plaintiff, at the time he signed the financial statement on March 8, 2007, he did not include his PTT membership interests because he did not know the amount or value of his interest and because Defendants had denied that he was entitled to any such interest. Rsp. to Mtn. Sum. J. at 23-24.

I do not find that Plaintiff is attempting to create a "sham fact" issue. In *Franks v. Nimmo*, 796 F.2d 1230 (10th Cir. 1986), the Tenth Circuit recognized that trial courts can disregard an affidavit proffered in response to a motion for summary judgment where the affidavit conflicts with the affiant's prior sworn statements. *Franks*, 796 F.2d at 1237 ("the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact by submitting an affidavit contradicting his own prior testimony"). However, where the party proffering the allegedly conflicting affidavit offers an explanation for the conflict, the issue becomes a credibility question that should be decided by the jury. *See* Wright & Miller, *supra*, at § 2726; *see also Cleveland v. Policy Mgmt. Systems Corp.*, 526 U.S. 795,

806-07 (1999). Here, Plaintiff has proffered an explanation for the alleged discrepancies between the representations made on his financial statement and his position in this case. It will be up to the jury to consider whether Plaintiff's explanation is credible. Therefore, Defendant Blane is not entitled to summary judgment as to Plaintiff's securities law claim.

4. Interference With Contract

I next address Defendant Blane's assertion that he is entitled to summary judgment on Plaintiff's claim for interference with contract. In connection with this claim, Plaintiff asserts that throughout his tenure at PTT, Defendant Blane interfered with his relationship with PTT by hindering his performance under the Tinley Agreement and causing PTT not to perform its obligations under the Tinley Agreement. *See* Final Pretrial Order, at 5. Defendant Blane contends that this claim fails as a matter of law because a party to a contract cannot be liable for interfering with its own contract. *See* Mtn. Sum. J. at 19-20.

Colorado recognizes the tort of intentional interference with contract as set forth in Section 766 of the Restatement (Second) of Torts:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*See Westfield Development Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1116-18 (Colo. 1990); *Memorial Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc.*, 690 P.2d

207, 210 (Colo. 1984). "Under Colorado law, the tort exists to protect parties to a contract; accordingly, it is the conduct of the third person *who is not a party to the contract* that is punished for inducing a breach or preventing performance of the contract." *Colorado Nat'l Bank v. Friedman*, 846 P.2d 159, 170 (Colo. 1993). In other words, a plaintiff cannot simultaneously claim that a defendant is both a party liable for breach on an agreement and at the same time a separate third party capable of interfering with performance of the agreement. *Friedman*, 846 P.2d at 172.

Nevertheless, Plaintiff maintains that in this case the "Tinley Agreement is between four separate parties - Tinley, Blane, PTT, and PTI, and the Agreement provides for separate rights and obligations between and among them." Rsp. to Mtn. Sum. J. at 27. According to Plaintiff, he is suing Defendant Blane for interfering only with the portion of the contract between Plaintiff and PTT at a time when Defendant Blane was acting outside his authority as agent of PTT. In support of his position, Plaintiff cites *Sufrin v. Hosier*, 128 F.3d 594, 598 (7th Cir. 1997), a case in which the Seventh Circuit, applying Illinois law, found that where a party to a distribution agreement had independent contractual obligations to both plaintiff and defendant (who were also parties to the contract), plaintiff could purse a claim for interference with contract based on defendant's alleged interference with the party's obligations to plaintiff.

Plaintiff brings claims against both PTT and Defendant Blane for breach of the Tinley Agreement. I note that the Tinley Agreement lists the 'parties' to the Agreement as "Poly Triplex Technologies, Inc.; Poly Triplex Investors, LLC and Chris Blane,

-20-

(collectively the "Company") and Mat Tinley or a company that Tinley nominates ("Tinley")." *See* Exhibit A to Complaint and Jury Demand. Under Colorado law Defendant Blane, as an alleged party to the Tinley Agreement, cannot be liable for interfering with his own contract. *See Friedman*, *supra.* I further note that I am not bound by the reasoning set forth in the *Sufrin* case and, in any event, I find *Sufrin* to be distinguishable from the instant case. Here, Plaintiff has not demonstrated that Defendant Blane's alleged interfering conduct was done in his individual capacity, rather than in his capacity as the director of PTT. Therefore, Defendant Blane is entitled to summary judgment on Plaintiff's claim for intentional interference with contract.

### 5. Accord and Satisfaction

Defendants further claim that because Plaintiff's financial statement made in connection with his divorce proceedings states that he did not own stock, business interests, or had money owing to him, and that he owed Defendant Blane $26,000, Plaintiff agreed to an accord and satisfaction by voluntarily reducing his salary, and accepting these amounts in full satisfaction of his compensation.

Accord and satisfaction is an affirmative defense on which the party asserting it has the burden of proof. *See* Fed. R. Civ. P. 8(c). "An accord is a contract under which an obigee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty." *R.A. Reither Const., Inc. v. Wheatland Rural Elec. Assn.*, 680 P.2d 1342, 1344 (Colo. App. 1984) (citing Restatement (Second) of Contracts § 287 (1981)). Under Colorado law, the elements necessary to establish an accord and satisfaction are as follows:

> In order to constitute an accord and satisfaction, it is necessary that the money should be offered in full satisfaction of the demand, and be accompanied by such acts and declarations as amount to a condition that the money, if accepted, is accepted in satisfaction; and it must be such that the party to whom it is offered is bound to understand therefrom that if he takes it, he takes it subject to such conditions.

*Hudson v. American Founders Life Ins. Co.*, 377 P.2d 391 (1962).

Defendants' theory that Plaintiff's representations in connection with his divorce proceeding constitute an accord and satisfaction are somewhat confusing. While Plaintiff's decision to voluntary lower his salary might be some evidence that he agreed to discharge Defendant's salary obligations, it does not establish, as a matter of law, that Plaintiff agreed to an accord and satisfaction. Whether the elements of accord and satisfaction are satisfied is a question of fact for the jury to decide. *Federal Lumber Co. v. Wheeler*, 643 P.2d 31 (Colo. 1981). Defendants are not entitled to summary judgment on this affirmative defense.

6. <u>Counterclaims</u>

Finally, I address Defendants' contention that they are entitled to summary judgment on their counterclaims for "Money Had and Received." As discussed above Defendant Blane maintains that he advanced Plaintiff a total of $83,500.00 which was never repaid. Similarly, PTT contends that Plaintiff improperly accepted $88,440.19 in expense reimbursements from PTT without providing proper documentation.

I find that Plaintiff demonstrated in his Response to Defendants' Revised Motion for Summary Judgment that there are genuine issues of material fact regarding Defendants' counterclaims. First, Plaintiff has attached to his response copies of his

deposition testimony in which he denies Defendant Blane's characterization of the monies paid to him as "loans," and asserts that he listed all funds from Defendants as compensation with the Internal Revenue Service. Tinley Dep. at 206:25 - 208:4. Plaintiff has also attached an affidavit to his response in which he states that he never received any business advances from Defendant Blane, and that all expense reimbursements he received from PTT were for proper business expenses related to his work for PTT. *See* Tinley Affidavit at ¶¶ 3-4. While Defendant Blane has produced documentation that he wire transferred funds to Plaintiff on various occasions, it is not clear that the funds advanced were loans. Accordingly, I find that there are genuine issues of material fact regarding Defendants' counterclaims, and that summary judgment is not proper on these counterclaims.

IV.    <u>CONCLUSION</u>

For the reasons set forth above, it is hereby

ORDERED that Defendants' Revised Motion for Summary Judgment [#55], filed June 3, 2008, is **GRANTED IN PART AND DENIED IN PART** as set forth herein. It is

FURTHER ORDERED that the Motion is **GRANTED** as to Plaintiff's Third Claim for Relief for Interference with Contract against Defendant Blane, and **DENIED** in all other respects, including Defendants' request for summary judgment as to their counterclaims.

Dated:  March 26, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief U. S. District Judge