IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 07-cv-01136-WYD-KMT

MATHEW TINLEY,

Plaintiff,

v.

POLY-TRIPLEX TECHNOLOGIES, INC., a Florida corporation; and
W. CHRIS BLANE,

Defendants.

---

**ORDER**

---

I. INTRODUCTION AND BACKGROUND

THIS MATTER comes before the Court on Defendants Poly-Triplex Technologies, Inc. and W. Chris Blane's Motion for Attorney's Fees and Expenses, filed May 6, 2010 [ECF No. 182]. Defendants seek fees against Plaintiff and Plaintiff's trial counsel, Walter S. Cowger.

By way of background, I note that Plaintiff initiated this action on April 25, 2007, in District Court for the City and County of Denver, and it was removed to this court on May 30, 2007. This case involves a dispute over the business relationship between Plaintiff Mathew Tinley and Defendants W. Chris Blane ("Blane") and Poly-Triplex Technologies, Inc. ("PTT"). PTT is a Florida corporation, incorporated in February, 2003, that manufactures a product used to rehabilitate manholes. In September 2003, Defendant Blane organized Poly-Triplex Investors, LLC ("PTI") as a vehicle to acquire

PTT's shares, and solicited membership interests in PTI. In June, 2004, PTI acquired 100% of PTT's shares. Plaintiff eventually became president and CEO of PTT. At trial, the parties vigorously disputed the terms of Plaintiff's employment with PTT. According to Plaintiff, in September 2004, he entered into a written agreement with Defendant Blane, acting on his own behalf and on behalf of PTT, which provided (1) that Plaintiff would be president and CEO of PTT and could only be removed by unanimous consent of PTT's board of directors (comprised solely of Plaintiff and Defendant Blane); (2) that Plaintiff would have sole responsibility for the day to day operations of PTT; (3) that Plaintiff would receive a base annual salary of $300,000, increased annually by a cost of living adjustment; (4) that Plaintiff and Defendant Blane would divide equally any percentage interest in PTI (after recovery by Defendant Blane of his initial investment in PTT after June 22, 2004) not held by persons or entities unaffiliated with Defendant Blane (who allegedly represented that 45% of the membership interests in PTI were held by other investors brought in by Defendant Blane); and (5) that PTT would pay Plaintiff a $900 monthly car allowance, provide paid vacation, comprehensive medical and dental insurance and reimbursement for all expenses related to carrying out Plaintiff's duties and responsibilities. Plaintiff refers to this agreement as the "Tinley Agreement."

At trial Plaintiff contended that Defendants breached the Tinley Agreement, interfered with his management of PTT, failed to reimburse him for certain expenses, improperly terminated him, and refused to provide documentation substantiating his membership interest in PTI. Defendant Blane admitted that he met with Plaintiff to

discuss Plaintiff's ongoing compensation and to formulate some program whereby Plaintiff might be eligible to receive stock or stock options which would vest upon certain goals being reached by PTT, but maintained that no agreement was ever reached. Defendant Blane further contended that he never signed the Tinley Agreement, never received it, and never saw the document until the instant action was filed. Defendant Blane denied that he improperly terminated Plaintiff and asserted that he advanced Plaintiff a total of $83,500.00 in loans which were never repaid. Similarly, PTT presented evidence that Plaintiff improperly accepted $88,440.19 in expense reimbursements from PTT without providing proper documentation.

Plaintiff initially asserted claims for breach of contract, promissory estoppel, interference with contract (against Defendant Blane) and a claim for securities law violations pursuant to C.R.S. §§ 11-51-501 and 11-51-604 (against Defendant Blane). In addition, Defendants both asserted counterclaims for "Money Had and Received."

A jury trial took place over two weeks beginning Monday April 5, 2010. Plaintiff's interference with contract claim was dismissed on summary judgment prior to trial, and his securities law claim was dismissed pursuant to Fed. R. Civ. P. 50(a) before the matter was submitted to the jury. Because the promissory estoppel claim was equitable in nature, the jury was instructed only as to Plaintiff's breach of contract claim and Defendants' counterclaims. The jury returned a verdict finding that Plaintiff and Defendants did not enter into the Tinley Agreement, which effectively foreclosed Plaintiff's breach of contract claim. In addition, the jury found in favor of Defendants on their counterclaims and awarded $100,250.00 to Defendant Blane and $121,381.00 to

Defendant PTT. Following trial, I determined that Plaintiff was not entitled to any relief on his equitable claim for promissory estoppel because the evidence presented demonstrated that even if Defendant Blane made promises to Plaintiff concerning his employment, Plaintiff did not rely on these promises to his detriment. Even accepting that his employment was prematurely terminated, I found that Plaintiff did not present evidence of damages he suffered in reliance on a promise of future employment. Judgment entered on April 22, 2010.

In the instant motion, Defendants seek reimbursement for all attorneys' fees and expenses incurred in this litigation pursuant to Colo. Rev. State. § 13-17-102.

## II. ANALYSIS

### A. Legal Standard:

Under Colorado law, a court may award reasonable attorneys' fees in any civil action of any nature. Colo. Rev. Stat. § 13-17-102 provides that the court shall award reasonable attorneys' fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines (1) lacked substantial justification; (2) was interposed for delay or harassment; or when the court determines (3) that an attorney or party unnecessarily expanded the proceeding by other improper conduct. The term "lacked substantial justification" under the statute "means substantially frivolous, substantially groundless, or substantially vexatious." C.R.S. § 13-17-102(4). A claim "is frivolous if the proponent can present no rational argument based on the evidence or law in support of that claim or defense." *Harrison v. Luse*, 760 F.Supp. 1394, 1400 (D. Colo. 1991) (citing *Western United Realty, Inc. v. Isaacs*,

679 P.2d 1063, 1069 (Colo. 1984)). A claim is "groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial." *Id*. And a claim is vexatious if it is brought or maintained in bad faith, including conduct that is stubbornly litigious." *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 511 (Colo. App. 2009).

In addition, Colo. Rev. Stat. § 13-17-103 provides that "in determining whether to assess attorney fees and the amount of attorney fees to be assessed against any offending attorney or party," the court shall consider:

> (a) The extent of any effort made to determine the validity of any action or claim before said action or claim was asserted;
>
> (b) The extent of any effort made after the commencement of an action to reduce the number of claims or defenses being asserted or to dismiss claims or defenses found not to be valid within an action;
>
> (c) The availability of facts to assist a party in determining the validity of a claim or defense;
>
> (d) The relative financial positions of the parties involved;
>
> (e) Whether or not the action was prosecuted or defended, in whole or in part, in bad faith;
>
> (f) Whether or not issues of fact determinative of the validity of a party's claim or defense were reasonably in conflict;
>
> (g) The extent to which the party prevailed with respect to the amount of and number of claims in controversy;
>
> (h) The amount and conditions of any offer of judgment or settlement as related to the amount and conditions of the ultimate relief granted by the court.

C.R.S. § 13-17-103(1)(a)-(h).

B. Whether an Award of Attorneys' Fees is Appropriate:

Here, Defendants contend that they are entitled to attorneys' fees because Plaintiff knew his claims were groundless and initiated this action in bad faith and to obstruct and impede any development of PTT and its product. Defendants also assert that Plaintiff's counsel could never have reasonably believed that the Tinley Agreement was an authentic document, and maintain that he necessarily had to know that the document was a forgery. Defendants further contend that by allowing Plaintiff to testify that the document was authentic, Plaintiff's counsel is guilty of suborning perjury. Finally, Defendants note that they wholly prevailed on all of Plaintiff's claims and their counterclaims. Both Plaintiff and his trial counsel, Walter S. Cowger, have separately responded to the motion.

1. Whether An Award is Appropriate Against Plaintiff

I first address Defendants' contention that the claims asserted by Plaintiff in this action were substantially frivolous, groundless and vexatious.

As noted above, a claim "is frivolous if the proponent can present no rational argument based on the evidence or law in support of that claim or defense," and it is "groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial." *Harrison*, 760 F.Supp. at 1400. Here, I find that Plaintiff presented a rational legal and factual argument in support of each of his claims. I denied Defendants' request for summary judgment on all but one of Plaintiff's claims, and found that the record contained issues of material fact that would preclude entry of summary judgment on his

remaining claims. While Plaintiff's interference with contract claim was dismissed as legally insufficient, I do not find that it was wholly frivolous because Plaintiff presented a rationale argument in support of the claim[1]. The fact that I disagreed with Plaintiff's argument does not necessarily make that argument frivolous or groundless. *M Life Ins. Co. v. Sapers & Wallack Ins. Agency, Inc.*, 962 P.2d 335, 339 (Colo. App. 1998).

Moreover, while Plaintiff did not ultimately prevail on any of his remaining claims, they were not completely unsupported by credible evidence at trial. While Plaintiff's security law claim was dismissed at the close of evidence, I cannot say that Plaintiff failed to present any rational argument in support of this claim. Plaintiff contended that Defendants agreed to compensate him with a percentage interest in PTI. While I ultimately concluded that Plaintiff did not produce sufficient evidence of a scheme to defraud, I do not find that the claim as presented and litigated was frivolous, or that it was not supported by any credible evidence at trial.

As to the existence of a written contract between the parties, Plaintiff testified at trial that the Tinley Agreement contained the terms of his employment agreement with Defendants, and he repeatedly testified that he did not forge Defendant Blane's signature on the Tinley Agreement. In contrast, Defendant Blane testified at trial that he did not sign the Tinley Agreement. While the jury ultimately concluded that Plaintiff and Defendants did not entered into a contract, Plaintiff presented evidence that he was

---

[1]In response to Defendants' motion for summary judgment, Plaintiff asserted that he was suing Defendant Blane only for the portion of the contract between Plaintiff and PTT at a time when Defendant Blane was acting outside his authority as a agent of PTT.

initially compensated according to the terms of the Tinley Agreement. Thus, Plaintiff's breach of contract and promissory estoppel claims were not substantially groundless.

I also reject Defendants' allegations that Plaintiff's claims were vexatious and maintained in bad faith. Defendants contend that Plaintiff improperly prosecuted his securities law claim in a deliberate attempt to harm PTT's business, and that the Tinley Agreement is a forged document. Defendants allegations of a deliberate attempt to harm PTT are conclusory and not supported by evidence in the record. In addition, while Defendants have vigorously asserted that the Tinley Agreement is a forgery, Plaintiff has consistently maintained that the document is genuine. The fact that the jury ultimately concluded that the parties did not enter into a written contract in the form of the Tinley Agreement does not necessarily establish that the Tinley Agreement is a forgery. The evidence presented on this issue consists of the parties' directly conflicting testimony. The fact that the only evidence of the existence of the Tinley Agreement is a copy of a hand-written, undated, and un-notarized document suggests that the parties never reduced any discussions between them to a final, written, agreement. However, I cannot say on the record before me that there is such overwhelming evidence that the Tinley Agreement is a forgery that would warrant imposition of sanctions in this case. Therefore, I find that Plaintiff's claims based on the Tinley Agreement were not substantially vexatious. *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 511 (Colo. App. 2009).

In addition, I find that consideration of the factors set forth in C.R.S. § 13-17-103, does not support an award of attorneys' fees in this case. None of the factors

enumerated therein tilt strongly in favor of one party. As discussed above, I do not find, based on the evidence in the record, that Plaintiff prosecuted his claims in bad faith. Moreover, this case was factually driven with each side presenting a diametrically opposed versions of events. While Defendants successfully defended against all of Plaintiff's claims and prevailed on their counterclaims, I cannot say that this factor alone is sufficient to justify an award of attorneys' fees in this case.

2. Whether an Award is Appropriate Against Mr. Cowger

I now address whether an award of attorneys' fees is appropriate against Mr. Cowger, Plaintiff's trial counsel.

C.R.S. § 13-17-102(3) authorizes the trial court to impose sanctions against an attorney, the client, or both. However, "in exercising this authority, a trial court should allocate sanctions between the attorney and the client according to their relative degrees of responsibility for the violation of the act." *Anderson Boneless Beef, Inc. v. Sunshine Health Care Center, Inc.*, 878 P.2d 98, 101 (Colo. App. 1994).

As an initial matter, I note that Mr. Cowger entered his appearance in this case approximately one month prior to trial, after the completion of all discovery and resolution of all dispositive motions. In addition, as discussed above, I do not find that the claims asserted by Plaintiff in this case to be substantially frivolous, groundless or vexatious. Moreover, allegations that Mr. Cowger knew that Plaintiff's claims were groundless, that the Tinley Agreement was a forgery, and Plaintiff would commit perjury are speculative and not supported by evidence in the record. Finally, Defendants have not segregated and itemized the fees and costs specifically attributable to Mr. Cowger's

alleged conduct. Therefore, I find that an award of attorneys' fees against Mr. Cowger is not appropriate in this case.

Finally, to the extent Plaintiff requests an award of attorneys' fees and costs pursuant to Fed. R. Civ. P. 54(d)(2) or 28 U.S.C. § 1927, I reject this request. Rule 54 is a procedural rule does not provide an independent basis to assess attorneys' fees as a sanction. In addition, I find that 28 U.S.C. § 1927, which applies to an attorney or person who unreasonably and vexatiously "multiplies the proceedings," is not applicable to the conduct at issue in this case.

III. CONCLUSION

Therefore, for the reasons set forth herein, it is hereby

ORDERED that Defendants' Poly-Triplex Technologies, Inc. and W. Chris Blane's Motion for Attorney's Fees and Expenses, filed May 6, 2010 [ECF No. 182] is **DENIED**.

Dated: February 23, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief U. S. District Judge